IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TANIA L. ZICKERT,

|                     |            |                   |
|---------------------|------------|-------------------|
|                     | Plaintiff, | REPORT and        |
| v.                  |            | RECOMMENDATION    |
| FRANK BISIGNANO,[1] |            | 23-cv-584-wmc     |
|                     | Defendant. |                   |

---

Plaintiff Tania L. Zickert seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding Zickert not disabled within the meaning of the Social Security Act.  This matter was referred to me for a report and recommendation in accordance with Federal Rule of Civil Procedure 72(b)(1).  Dkt. 19.

Plaintiff challenges the decision of the Administrative Law Judge (ALJ).  The ALJ concluded plaintiff could perform several jobs in the national economy and so was not disabled. In reaching that conclusion, the ALJ acknowledged plaintiff's report of debilitating fibromyalgia pain and agreed that it was a severe impairment but did not find it disabling.  The ALJ also found two agency physician reports about plaintiff's ability to work partially persuasive, agreeing with their assessment of plaintiff's hand and wrist issues but ultimately deciding to restrict plaintiff to light-exertion work when the physicians found her capable of medium work. Plaintiff appealed the ALJ's decision to this court after the Social Security Appeals Council denied plaintiff's application for review.  Plaintiff now seeks remand, arguing that the ALJ failed to adequately explain their reasoning for discounting her pain symptoms and finding an

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d), Frank Bisignano is substituted as the defendant.

"impermissible middle-ground" residual functional capacity (RFC) that was not supported by substantial evidence. For the reasons below, I recommend that the court grant plaintiff's motion for summary judgment, Dkt. 7, in part and remand for further proceedings.

ALLEGATIONS OF FACT

In May 2021, plaintiff applied for disability insurance benefits alleging a disability start date of March 18, 2020. Dkt. 7 at 176. The application was denied initially in September 2021 and upon reconsideration in June 2022. *Id.* at 91 & 96. Plaintiff requested a hearing, which occurred on January 10, 2023. *Id.* at 106 & 39. On January 23, 2023, the ALJ issued their opinion. *Id.* at 18.

The ALJ followed the five-step process for determining whether an applicant is disabled laid out in 20 C.F.R. 404.1520(a). The ALJ determined that plaintiff was last insured on June 30, 2021, and so must establish that she was disabled on or before that date to qualify for disability benefits. Dkt. 7 at 23.

At step two, the ALJ found that plaintiff's fibromyalgia was a severe impairment and discussed her back problems. *Id.* at 24. The ALJ explained that plaintiff had experienced intermittent low back pain for years, with the pain worsening during the 2020–22 period. *Id.* The ALJ also highlighted that, despite tenderness and limited range of motion, plaintiff consistently showed normal sensation, strength, reflexes, and gait. *Id.*

At step three, the ALJ found that no single or combination of plaintiff's impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and so moved on to step four. *Id.* at 22.

2

At step four, the ALJ found plaintiff had the RFC to perform light work with restrictions on climbing and limited stooping, crouching, kneeling, and crawling. *Id.* at 23. The ALJ also permitted frequent, but not constant, bilateral handling and fingering. *Id.* In explaining their determination, the ALJ noted that plaintiff testified that she stopped working due to worsening health issues, including increased pain. *Id.* The ALJ noted that plaintiff reported being "greatly limited by her pain, . . . unable to remain in one position for more than 5–10 minutes at a time," and that she reported "difficulty completing basic household chores and pain with even getting off the couch." *Id.*

The ALJ found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence in the record. *Id.* The ALJ explained that plaintiff was primarily limited by nerve issues affecting her upper extremities during the relevant period. Plaintiff was diagnosed with carpel tunnel syndrome in March 2021 and sought treatment for it, culminating in right carpal tunnel release, right cubital tunnel release, right ulnar nerve decompression at the wrist, and right first dorsal compartment release in July 2021, one month after the date last insured. *Id.* at 25. Plaintiff underwent the same operations on her left side in August 2021.

Treatment notes from December 2021 reflected significant improvements following the operations and physical therapy. Treatment notes from the period stated that plaintiff had a "very functional grip." *Id.* at 79. Bilateral use of her hands went from 1% to 65% for the left hand and 73% for the right. *Id.* Despite some reports of swelling and numbness and new pain in her finger joints in February 2022, the ALJ noted that her overall numbness and tingling had improved since the surgery, that she exhibited full finger, wrist, and elbow range of motion,

3

and that tingling and hypersensitivity was not uncommon after surgery. *Id.* Similar complaints of hand pain or discomfort would continue until September 2022, but plaintiff showed normal sensation, strength, and range of motion throughout the entire period, and her care providers continued to recommend conservative treatment. *Id.* at 26.

Regarding plaintiff's fibromyalgia, the ALJ acknowledged that plaintiff was "experiencing some chronic pain during the period at issue." *Id.* Also, although her fibromyalgia diagnosis came several months after the date last insured, the ALJ acknowledged that "fibromyalgia is generally a chronic condition and may have been affecting [plaintiff] prior to that date as well." *Id.* The ALJ declared that they "fully considered the effects of the condition [therein]," but that plaintiff's examinations frequently "failed to reveal any significant abnormalities and often showed normal joint range of motion without inflammation, effusion, or deformity; intact sensation, full strength of all extremities; and normal gait." *Id.* The ALJ did not discuss plaintiff's fibromyalgia further besides noting that it factored into their decision to limit plaintiff to light work instead of medium, and that her obesity was possibly exacerbating her pain. *Id.* at 26–27.

The ALJ also considered the assessments provided by the non-examining state agency medical consultants, both of whom found plaintiff capable of performing medium-exertion work. *Id.* at 27. The ALJ found their opinions partially persuasive, agreeing that plaintiff should be limited to only frequent handling and fingering, but ultimately finding that the "cumulative effect of [plaintiff's] nerve issues, fibromyalgia, and obesity resulted in greater exertional limitations[.]" *Id.* at 27–28. Accordingly, the ALJ limited plaintiff to light-exertion work with some additional postural restrictions. *Id.* at 28.

Having crafted her RFC, the ALJ determined plaintiff could perform several jobs and, as such, was not disabled. *Id.* at 28–29. Plaintiff appealed the decision, and the Appeals Council denied review in June 2023. *Id.* at 6. Plaintiff sought judicial review from this court under 42 U.S.C. § 405(g) in August 2023. Dkt. 1.

## LEGAL STANDARDS

The Social Security Act, 42 U.S.C. §§ 405(g) & 1382(c)(3), authorizes review of the Commissioner's final decision. Upon review, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (same). If the reviewing court can understand *how*, given the evidence, the ALJ reached their conclusions, and the conclusion is legally valid, the opinion must be affirmed. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). As such, the court's role is "extremely limited," and it may not reweigh evidence, make credibility determinations, or substitute its judgment for the ALJ's. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023).

Although parties and courts often analogize substantial evidence to a "logical bridge" that an ALJ must construct between the evidence and their conclusions, the Seventh Circuit has cautioned district courts against conflating the metaphor with the standard—"the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) (citing *Biestek*, 587 U.S. at 99–100). Thus, there may be instances where a conclusion is adequately supported

by substantial evidence sufficient for a meaningful review even without a step-by-step explanation of how the ALJ followed the evidence to arrive at the conclusion.

The court will "reverse only if the record 'compels' a contrary result." *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010) (citation omitted). The Supreme Court has emphasized that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

ANALYSIS

Plaintiff argues the ALJ erred in two ways. First, that the ALJ did not support their assessment of plaintiff's fibromyalgia with substantial evidence by failing to discuss anything beyond objective medical findings. Dkt. 10 at 4–5. Second, that the ALJ reached an impermissible "middle ground" RFC by restricting her to light work without sufficiently explaining how it accommodated her handling and fingering issues, obesity, and fibromyalgia. *Id.* at 9–10. I agree with plaintiff that the ALJ did not offer sufficient discussion of her fibromyalgia symptoms and recommend remanding on this point. I do not, however, find any fault with the ALJ's assessment of plaintiff's handling and figuring issues and obesity.

**A. Fibromyalgia**

Plaintiff argues that the ALJ did not adequately follow step two of the process outlined in Social Security Ruling 16-3p when they concluded plaintiff's fibromyalgia was not disabling without discussing any evidence other than the lack of objective medical abnormalities. Dkt. 10 at 7. Social Security Ruling 16-3p requires an ALJ to first determine whether a person has a medical impairment that could reasonably be expected to produce the alleged symptoms and then determine the extent to which those symptoms limit the person's ability to work.

When considering the intensity, persistence, and limiting effects of fibromyalgia pain, the ALJ should not evaluate a person's symptoms "based solely on objective medical evidence" unless the evidence supports finding the person disabled.  SSR 16-3p.  Instead, ALJs must consider other record evidence, such as the person's statements regarding the frequency and duration of the symptoms, their impact on the person's ability to perform daily tasks and activities, precipitating and aggravating factors, any medication the person is taking to alleviate the symptoms, and measures taken to relieve the symptoms.  *Id.*; *Swiecichowski v. Dudek*, 133 F.4th 751, 757 (7th Cir. 2025).  This process applies with equal force to allegations of pain as to any other symptom.  *See* 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ found that plaintiff's fibromyalgia was a severe impairment.  The ALJ noted that "the record indicate[d plaintiff] was experiencing some chronic pain during the period at issue" related to her fibromyalgia.  Dkt. 7 at 30.  In reports submitted September 2021 and May 2022, plaintiff noted difficulty with most physical activities that interfered with her ability to perform basic daily activities, including personal care, preparing meals, completing household chores, and grocery shopping.  *Id.* at 28.  The ALJ further recounted plaintiff's testimony that she was "greatly limited by her pain," which made her "unable to remain in one position for more than 5–10 minutes at a time" and caused "difficulty completing basic household chores."  *Id.*  The ALJ agreed that her fibromyalgia could be expected to cause the alleged pain but that the extent to which it limited plaintiff's ability to work was not supported by medical and other record evidence.  *Id.*

The problem is that the ALJ never discussed nor cited any evidence other than plaintiff's unremarkable objective medical findings to substantiate their conclusion.  The ALJ states that they "fully considered the effects of [her fibromyalgia]," but, as evidence, offers *only* that

7

plaintiff's "examinations frequently failed to reveal any significant abnormalities, and often showed normal joint range of motion without inflammation, effusion, or deformity; intact sensation, full strength of all extremities; and normal gait." *Id.* at 30. This is exactly the kind of perfunctory dismissal of subjective symptoms based solely on objective medical evidence that SSR 16-3p prohibits.

The Seventh Circuit has emphasized that the "unique nature of fibromyalgia" makes "longitudinal review . . . critical to forming the 'logical bridge' between medical records and the ALJ's conclusions regarding the impact of [fibromyalgia]" on a person's ability to work. *Swiecichowski*, 133 F.4th at 759. In *Swiecichowski*, the Seventh Circuit found the ALJ's conclusions regarding the plaintiff's fibromyalgia pain unsupported by substantial evidence even though the ALJ recounted clinical findings that "frequently indicated no acute distress, strength in extremities, and other signs of normal function," as well the plaintiff's history of conservative treatment. *Id.* The court found the ALJ's analysis failed to give due consideration to fibromyalgia's tendency to "manifest in an *inconsistent* fashion," which "requires a more holistic longitudinal review to evaluate the severity of a claimant's fibromyalgic pain and its impact on her ability to work." *Id.*

The ALJ's explanation here is less informative than that offered in *Swiecichowski* and thus falls short of substantial evidence. Even reading the opinion in its entirety and drawing reasonable inferences, the ALJ offers no explanation for why plaintiff's testimony regarding her inability to manage self-care, chores, meal preparation, and grocery shopping, as well as her inability to remain in the same position for more than five minutes, were either incredible or not disabling. This court cannot give meaningful review to the ALJ's decision on this point

8

because they failed to build a logical bridge from the evidence of plaintiff's symptoms to their conclusion that she was capable of light work despite them.

None of defendant's arguments to the contrary are persuasive. First, defendant emphasizes that caselaw and Social Security Ruling 16-3p endorse the utility of examination observations in assessing the severity of pain. Dkt. 15 at 5, 10. This is an accurate reading of the authority, but it misses the mark. The issue is not whether the ALJ was allowed to consider examination observations—plaintiff concedes that they were. Dkt. 16 at 6. The issue is whether the ALJ failed to discuss evidence other than these examination observations. They did not, even though they were required to do so.

Second, defendant argues that the two agency physicians who reviewed plaintiff's case opined that she was capable of medium work, and it was not error for the ALJ to provide greater restrictions than any medical source by limiting plaintiff to light work. Dkt. 15 at 6 (citing *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019)). This point is discussed in the next section, and the court generally agrees with it, but it does not fix the problem with the ALJ's assessment of plaintiff's fibromyalgia pain. The two physicians who reviewed plaintiff's case did not meaningfully engage with plaintiff's fibromyalgia. Fibromyalgia is not mentioned anywhere in the first report, which predates plaintiff's fibromyalgia diagnosis, *see* Dkt. 7 at 68–75, and while it is listed as a new condition in the second report, *Id.* at 78, it is not included in the physician's analysis, *Id.* at 78–84. As a result, the reports do not clarify or explain the ALJ's reasoning regarding plaintiff's pain. In fact, the ALJ evidently thought greater restrictions necessary, restricting plaintiff to light instead of medium work, which the reviewing physicians permitted. Although the ALJ stated that they did so considering the cumulative effects of plaintiff's fibromyalgia and other impairments, restricting plaintiff to light work does not

necessarily accommodate the extent of her pain symptoms which, by the ALJ's own recounting, severely limited her ability to move, sit, or complete basic tasks.

Finally, defendant argues that plaintiff bears the burden of showing how her symptoms reflected disabling limitations prior to June 30, 2021, but that she was only diagnosed with fibromyalgia in October 2021. This is a fair point, but the ALJ "recognize[d] that fibromyalgia is generally a chronic condition and may have been affecting the claimant prior to that date as well." Dkt. 7 at 30. The ALJ never followed up on the extent to which they believed fibromyalgia *did* affect her before June 30, 2021, aside from concluding she was not disabled. A holistic, longitudinal review of a person's fibromyalgia complications is "critical" to the ALJ's analysis. *Swiecichowski,* 133 F.4th at 759. Such a review did not occur here. Even if it is plaintiff's burden to show she was disabled before her date last insured, it is the ALJ's burden to support their conclusions with substantial evidence.

The dearth of evidence or discussion of plaintiff's fibromyalgia pain beyond objective medical findings violates SSR 16-3p and makes the ALJ's conclusion on that point unreviewable. *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) ("[An ALJ] must build a 'logical bridge' from the evidence to her conclusion by providing an explanation sufficient to allow us to assess the validity of the ultimate findings and afford meaningful review."). For this reason, I recommend granting summary judgment on this issue and remanding for further proceedings.

## B. Plaintiff's RFC

Plaintiff argues the ALJ failed to sufficiently explain how they arrived at plaintiff's RFC by overlooking or making impermissible inferences regarding plaintiff's wrist and hand issues,

obesity, and fibromyalgia. Because the court has already recommended the case be remanded to address plaintiff's fibromyalgia pain, this section will focus on the other issues plaintiff raises.

Regarding plaintiff's handling and fingering restrictions, she argues that the ALJ did not provide a "function-by-function assessment under SSR 96-8p" but, instead, adopted an impermissible "middle ground RFC" untethered from record evidence. Dkt. 10 at 9–11. She also criticizes the ALJ's findings based on the two reports of the two reviewing agency physicians. *Id.* The two physicians found plaintiff capable of performing medium work, Dkt. 7 at 68–75 & 77–84, but the ALJ limited plaintiff to light work with additional postural restrictions considering "the cumulative effect of [her] nerve issues, fibromyalgia, and obesity," Dkt. 7 at 27. Plaintiff contends that the ALJ's decision to order more restrictive limitations than the physicians permitted was not explained or supported by substantial evidence. Dkt. 10 at 11.

This series of arguments is not persuasive for several reasons. Chief among them is that the ALJ relied on the narrative RFC determinations offered by the two reviewing physicians. *See Burmester v. Berryhill*, 920 F.3d 507 at 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination."); *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("[A]n ALJ may rely on a doctor's narrative where it adequately translates those worksheet observations."). The court understands a "middle ground RFC" to result from an ALJ's discrediting of all medical opinions, resulting in an RFC that is not tied to and less accommodating than any medical opinion in record. *See, e.g., McNamara v. Kijakazi*, No. 21-CV-63-WMC, 2023 WL 2042171, at *3 (W.D. Wis. Feb. 16, 2023). But that is not what the ALJ did here. In fact, the ALJ found *greater* restrictions than the agency physicians, which is not error in this case. *See Dudley*, 773

11

F. App'x at 843 ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."). By finding greater limitations than the agency physicians, who both contended with plaintiff's obesity and wrist and hand issues, the ALJ supported this aspect of their opinion with substantial evidence.

Second, plaintiff does not explain *how* the issues with her grip or obesity should have led to a different outcome. She notes that she had "only 65% use of the left hand and 73% of the right, swelling, numbness, tingling and pain," Dkt. 10 at 10, but neither cites any law suggesting nor argues that those facts warrant specific, greater restrictions. It is plaintiff's "burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018).

Finally, regarding plaintiff's obesity specifically, the ALJ factored it into her RFC by both restricting her to light work and prohibiting her from using ladders. Dkt. 7 at 26–27. Unlike her fibromyalgia pain, plaintiff does not explain how or argue that her obesity limited her ability to work beyond what the ALJ permitted.

I see no fault with the ALJ's treatment of these particular issues and no need to independently revisit these points on remand.

## RECOMMENDATION

For the foregoing reasons, I recommend that plaintiff's motion for summary judgment and remand, Dkt. 7, be GRANTED in part and DENIED in part, and the decision of the commissioner be REVERSED in part and REMANDED for further proceedings in keeping with this report.

Entered April 9, 2026.

BY THE COURT:

/s/

_____

ANITA MARIE BOOR
Magistrate Judge

United States District Court
Western District of Wisconsin
Robert W. Kastenmeier Courthouse
120 North Henry Street, Room 540
Madison, Wisconsin  53703

Chambers of                                                                                    Telephone:
Anita Marie Boor                                                                          608-264-5447
Magistrate Judge

April 9, 2026

Meredith Emily Marcus
Osterhout Berger Daley
4256 N. Ravenswood Ave.
Suite 104
Chicago, IL 60613

SSA-Office of the General Counsel
c/o Office of Legal Operations/Blake Pryor
6401 Security Boulevard
Altmeyer Building, Room 617
Woodlawn, MD 21235

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before April 23, 2026, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by April 23, 2026, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/

Magistrate Judge Anita Marie Boor

Enclosures

14

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

> (1) injunctive relief;
> (2) judgment on the pleadings;
> (3) summary judgment;
> (4) to dismiss or quash an indictment or information;
> (5) to suppress evidence in a criminal case;
> (6) to dismiss or to permit maintenance of a class action;
> (7) to dismiss for failure to state a claim upon which relief can be granted;
> (8) to dismiss actions involuntarily; and
> (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* **462 F.3d 684, 688 (7th Cir. 2006).**